10/29/2020 10:07 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 47663792
By: Marcella Hill
Filed: 10/29/2020 10:07 PM

EXHIBIT-2

CAUSE NO. 2016-87941

| | | |
|---|---|---|
| MIRAMAR LAKE HOMEOWNERS ASSOCIATION INC. | § | IN THE DISTRICT COURT |
| *Plaintiffs* | § | |
| | § | |
| VS. | § | |
| | § | |
| ELIZABETH THOMAS   *ET.,AL* | § | 333RD JUDICIAL DISTRICT |
| *Defendant Counter-Plaintiffs 3d Party Plaintiff* | § | |
| | § | |
| VS. | § | |
| | § | |
| MERITAGE HOMES CORPORATION, MERITAGE | § | |
| HOMES OF TEXAS LLC., MTH LENDING GROUP L.P | § | |
| PRIMARY RESIDENTIAL MORTGAGE INC, | § | |
| STEWART TITLE COMPANY MARY A. LESTER | § | HARRIS COUNTY, TEXAS |
| JP MORGAN CHASE BANK N.A. | § | |
| *3d Party Defendants* | § | |
| | § | |
| VS. | § | |
| | § | |
| ALVIN R. MULLEN | § | |
| *Intervenor /3d Party Plaintiff* | § | |

## ORGINAL PETITION IN INTERVENTION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, **ALVIN R. MULLEN** ("*Intervenor /3d Party Plaintiff"),* and  files

this Original Petition in Intervention against **MTH LENDING GROUP L.P.MERITAGE**

**HOMES CORPORATION**, STEWART TITLE COMPANY, MARY A. LESTER and **JP MORGAN**

**CHASE BANK N.A** (the 'Defendants') and respectfully shows court as follows:

### I. DISCOVERY CONTROL PLAN

1.     Discovery shall be conducted under Level 2, pursuant to Rule 190.3 of the Texas

Rules of Civil Procedure.

## II.   <u>PARTIES</u>

2.      3rd Party PLAINTIFF/Intervenor Alvin R. Mullen, is an individual person and Texas resident residing at 8210. Terra Valley Lane, Tomball, Texas 77375.

3.      3rd Party DEFENDANT **MERITAGE HOMES CORPORATION** is a Maryland Corporation with its principle place of business being: 7 St Paul Street Suite 820, Baltimore MD. Service of citation can be made upon its registered agent CSC-Lawyers Incorporating Service Company 7 St Paul Street Suite 820, Baltimore MD. 21201.

4.      3rd Party DEFENDANT **STEWART TITLE COMPANY,** is a Texas Corporation Service of citation can be made upon its registered agent c/o C T Corporation System 1999 Bryan St., Ste. 900 Dallas, TX 75201-3136 USA.

5.      3rd Party DEFENDANT **MARY A. LESTER**, IS an individual IS an individual Service of citation can be made at her home address at 3507 Loure Ln, Houston Texas, 77082.

6.      3rd Party DEFENDANT **JP MORGAN CHASE BANK N.A,** IS a Nations Banking Association Service of citation can be made upon its registered agent c/o CT Corporation System 4400 Easton Commons Way, Suite 125 Columbus, OH 43219.

## III.   JURISDICTION AND VENUE

7.      All or a substantial part of the actions, events, and/or omissions giving rise to this cause of action occurred in Harris County, Texas.  The property made the subject of this suit is located in Harris County, Texas.  Therefore, pursuant to Civil Practice & Remedies Code Sections 15.002(a)(1) and 15.0002(a)(2), venue is proper in Harris County, Texas.   Jurisdiction is proper in the District Court of Harris County, Texas because this matter involves an amount in excess of the minimum jurisdictional limits of this Court and involves issues in controversy that are within the jurisdiction of this Court.

## IV. FACTUAL ALLEGATIONS

**A. MTH Title Company False and Fraudulent Real Estate Closings**

8.      **On April 14, 2007**, Meritage Homes, lender MTH Lending Group L.P., located at **550 Westcott, STE 450, Houston Tex, 77007** through its loan officer, Patrick Iglinsky, notified Plaintiff Mullen that he was approved for an "**extension of credit,**" an "**annuity**", an "**insurance product**" by lender MTH Lending Group for unpaid portion of his purchase price in the amount of **$214,690.00**, under loan number **1000629616** toward the unpaid portion of their purchase price.

9.      Sometime in the year of 2015, Mr. Mullen discovered from the **Texas** Office of Consumer Credit, that In the State of Texas, an "extension of credit", is a mortgage loan originated under the provisions of the Texas Constitution govern by Section 50(a)(6) of Article XVI, of Texas Constitution and is a "Texas Home Equity second junior mortgage" for a cash-out-refinance loan. This is used for a Texas homestead/homeowner that already owns real property and has stored up equity and seeks to convert their equity (which is the difference between the home's market value and its outstanding mortgage debt) into spendable cash.  An "extension of credit" cannot be used to consummate and fund a new buyer's real property purchase.

10.      Instead Mr. Mullen discovered from a loan filed received from Stewart Title Company though a discovery device which evidence that unknown to Mullen at the time is that MTH Lending Group L.P., loan officer employee Patrick Iglinsky, had shared his personal and confidential financial information with their  partner Market Street Mortgage Corporation a then loan correspondent for Netbank and together they filed a fraudulent conventional loan in Mr. Mullen names with his knowledge to consent. That was approved in Mullen name.

11.      **On April 14, 2007,** Defendant MTH Lending Group L.P., loan officer employee Mr. Iglinsky, informed Mr. Mullen that he was approved for a "extension of credit" and never told Mr.

Mullen that they were additionally going to share his personal and confidential financial information with Market Street so as to apply for another loan; instead Mr. Mullen was notified that he was approved for an extension of credit as such did not need a financial institutional loan.

12.     The cash from Netbank stemming from a fraudulent consumer loan was set for disbursement on May 21, 2007, the same day as Mr. Mullen was scheduled to close on its fictitious loan from his lender MTH Lending Group for an "extension of credit" i.e.,  Texas Home Equity loan.

13.     According to Defendants, Stewart Title Company, Meritage Corporation and Mary A. Lester-Gonzales, f/k/a MTH Title Company LC, escrow employee Ashleigh Jones on, May 21, 2007, the same day of Mr. Mullen closing unbeknownst to him is that cash in the amount of **$207,685.52** from Netbank was received.

14.     According to Defendants, Stewart Title Company, Meritage Corporation and Mary A. Lester-Gonzales, f/k/a MTH Title Company LC, escrow employee Ashleigh Jones, on May 21, 2007, she wired this cash in the amount of **$207,685.52 plus** the amount of **$14, 346.80** from Mullen down payment bring the total amount of **$222,012.32**, and paid directly to Guaranty Federal Bank, who thereinafter issued a credit to Meritage Corporation account. Under TILA this transaction was for *commercial business* …….. purposes pursuant to "15 U. S.C §1603(1).

15.     This cash that MTH Title Company received on May 21, 2007, by wire transfer from Netbank was not used to fund Mr. Mullen purchase price. Moreover Mr. Mullen never applied to Netbank for mortgage loan indeed their exist no loan agreements between Netbank and Mullen as mandatorily required under Chapter 26 of the Texas Business & Commerce Code ("Statute of Frauds" which provides that in order for agreements involving more than $50,000 to be enforceable they must be in writing). Additionally Mr. Mullen never conducted any business with Meritage Corporation whom operates as a holding company with no independent assets or

business operations nor was he indebted to Guaranty Federal Bank for any outstanding debts.

16.     Having no written enforceable loan agreements or documents between "Mullen and Netbank" Defendants covered-up the illegal receipt of cash that was obtained in Mullen name by Netbank that was laundered and paid directly to Guaranty Federal Bank by falsifying the Mullen HUD-1 Real Estate Settlement Statement.

17.     Defendants Stewart Title Company, Meritage Corporation and Mary A. Lester-Gonzales, f/k/a MTH Title Company LC., and its escrow agent employee Michael Granson **knew** that the Texas Home Equity for loan for an "extension of credit" from MTH Lending Group L.P., was in fact merely a fictional loan used to lure Mr. Mullen to the closing.

18.     On May 21, 2007, Mr. Mullen baited to appear and attended what he believe was a real estate settlement closing at f/k/a MTH Title Company L.C. to finalize sale and purchase of the real property lot 27 in the Miramar Lake subdivision in Harris County Texas with its lender Defendant MTH Lending Group

19.     Defendants Meritage Corporation, Stewart Title Company and Mary A. Lester-Gonzales via f/k/a MTH Title Company escrow agent employee Michael Granson, baited Mr. Mullen into executing fictitious loan documents to lender MTH Lending Group L.P., for an **"extension of credit"** (Texas Hone Equity Loan) in the amount of **$214,690.00** under loan number **1000786762**, toward the unpaid portion of his purchase price for the lot of land in the Miramar Lake subdivision through deception or coercion with sole intention to defraud or harm in violation of Texas Penal Code §32.46(a).

20.     Defendants Meritage Corporation, Stewart Title Company and Mary A. Lester-Gonzales via f/k/a MTH Title Company escrow agent employee Michael Granson, provided Mr. Mullen execute a shack of loan documents, to signed for what he believe was for a extension of credit from his lender MTH Lending Group L.P. through deception or coercion for sole intention

to defraud or cause harm in violation of Texas Penal Code §32.46(a). Again during this time Mr. Mullen did not know that the extension of credit was nothing than a sham a fictitious loan.

21.     Instead Defendants Meritage Corporation, Stewart Title Company and Mary a, Lester-Gonzales via f/k/a MTH Title Company escrow agent employee Michael Granson falsified Mullen HUD-1 Real Estate Settlement Statement to give the false appearance on paper that said title company had instead received cash "good funds" from lender MTH Lending Group L.P., in the amount of $225,990.00, for a advance cash purchase money loan.

22.     The falsified HUD-1 gives the false appearance on paper that f/k/a MTH Title Company L.C., that on or before May 21, 2007, received cash funds in the amount of $225,990.00, from lender MTH Lending Group, and said funds were disbursed to the seller on behalf of Mullen. Knowing in fact no such funding in fact transpired.

| HUD-1 Line No. | DESCRITPION | PAID TO: | AMOUNT IN Of  CASH |
|---|---|---|---|
| *101* | *Contract Sales Price 225,990.00* | | *225,990.00* |
| *202* | Amounts received   on behalf of Mullen by Lender MTH Lending Group | MTH Title Company L.C | *225,990.00* |
| *801* | Loan Origination fee | MTH  Lending Group L.P. | *$2,146.90* |
| *808* | Underwriting fee | MTH Lending Group L.P. | *$250.00* |
| *811* | Wire Fee | MTH Lending Group LP. | *$150.00* |
| *603* | Cash to Seller | Meritage Homes of Texas LP., a Texas limited partnership | *$222,012.32* |

23.     This HUD-1 is fraudulent in that item **202** falsely show the receipt of cash from MTH Lending Group L.P., when in fact no such cash "good funds" was ever received.   Nor was MTH Lending Group L.P., licensed at this time as a lender with the Department of Saving and

Mortgage Lending for offer first lien mortgage loans to consumers  and to operate **without** a license is a felony of the third degree.

24.      This HUD-1 is fraudulent in that line item **603** falsely shows disbursing cash in the amount of **$222,012.32** was paid to the seller Meritage Homes of Texas L.P., a Texas limited partnership; **when in fact** this cash *in the amount of* **$222,012.32**, was paid the said title company by wire transfer directly to "Guaranty Federal Bank" to refinance and reduce Meritage Corporation's business/commercial debts. Under TILA this transaction was for commercial business ........ purpose. "15 U. S.C §1603(1).   Moreover Meritage Homes of Texas L.P., a Texas limited partnership had and has no legal existence according to the Texas Secretary of State.

25.      The May 21, 2007, cash funding transaction between "Netbank-Guaranty Federal Bank and Meritage Corp" is also evidence by Defendants Meritage Corporation, Stewart Title Company and Mary A. Lester-Gonzales via f/k/a MTH Title Company, escrow agent employee Michael Granson who prepared "Escrow Accounting Ledger" which evidence that cash in the amount of **$207,665.52**, was in fact received by wire transfer from Netbank , and together with Mr. Mullen down payment of **$19, 515.90**, the total amount of **$222,012.32,** was paid to Meritage Corporation via Guaranty Federal Bank by wire transfer.

26.      On the same day the Defendants Meritage Corporation, Stewart Title Company and Mary A. Lester-Gonzales via f/k/a MTH Title Company and its escrow agent employee Michael Granson concealed the money laundering transaction above from Mr. Mullen and continues to conceal it to this day.

27.      Unbeknownst to Mullen is that the Defendants had taken the mandatory loan disclosures, truth-in-lending disclosure, good faith estimate and loan documents etc., he executed and signed under the false pretenses that said loan documents represent final written agreements between him and lender MTH Lending Group L.P. for extension of credit; and also used them to

give the false appearance on paper that Mr. Mullen had instead executed said documents for an advance cash money purchase loan from MTH Lending Group L.P., to fund his purchase price in the amount of **$214, 690.00**, by removing all documents that reference a extension of credit.

     28.    In support of the fictitious advance cash money purchase loan from MTH Lending Group L.P., Defendant's escrow agent employee Michael Granson, on the same day prepared a falsified "Detail Disbursement Work" which fraudulently documents the receipt of cash was received on May 21, 2007, from MTH Lending Group L.P., by wire in amount of $214, 690.00, and the amount of $222,012.32_was disbursed and paid to Meritage Homes of Texas LP., a Texas limited partnership that had and as no legal existence due to never being legally form; and MTH Lending Group L.P., has themselves since denied ever funding Mullen with an first lien mortgage for advance cash money purchase loan nor were they lawfully license at this time to do so.

     29.    Defendants f/k/a MTH Title Company LC., and its escrow agent employee Michael Granson, caused a fraudulent non-funded advance cash purchase money promissory note to be executed naming the payee MTH Lending Group L.P, to be executed with full knowledge that it was never funded; and on May 24, 2007, Defendants f/k/a MTH Title Company LC., electronically recorded a fraudulent non-funded deeds of trust in the Harris County Real Property securing the non-funded promissory for MTH Lending Group L.P., and have done so against approximately **_one hundred and seventy-nine_**  (#179) other victims.

### V.    J.P. Morgan Chase Bank  was <u>Never</u> Servicing<br>a Loan from MTH LENDING GROUP LP.<br>for Alvin R. Mullen II

     30.    Beginning in June of 2007, the Mr. Mullen began making monthly mortgage payments via a mortgage account set-up by servicer J.P. Morgan Chase Bank N.A, f/k/a Chase Home Finance LC. ("CHASE") the belief that said monthly installment payments were being

applied for the repayment to his lender MTH Lending Group L.P., extension of credit, i.e, Texas Home Equity Loan having no knowledge of any other loan in his name.

31.     However CHASE *knew* they never obtained any servicing rights to collect payments for any fictitious Texas Home Equity loan from lender MTH Lending Group L.P., because this transaction in reality as detailed above in fact never transpired because Mr. Mullen was not funded with any cash on May 21, 2007, from MTH Lending Group., who also has since denied this transaction transpired.

32.      Nor had Chase obtained any servicing rights to collect the repayment for any fictional advance cash purchase money loan from lender MTH Lending Group L.P., as detailed above f/k/a MTH Title Company L.C., ***never*** received any advance cash  from MTH Lending Group L.P.,  this transactions also never in fact transpired. Even MTH Lending Group denies funding Mr. Mullen with any advance cash purchase money loan.

33.     In reality the only transaction that transpired on May 21, 2007, the same day as Mr. Mullen closing at f/k/a MTH Title Company L.C., was a business commercial transaction between Netbank whom by wire transfer sent the cash amount of **$207,665.52**, which was disbursed and paid by wire transfer a long with **$19, 515.90** of Mr. Mullen down payment in the total amount of $$222,012.32 to Guaranty Federal Bank to reduce Meritage Corporation outstanding business commercial debts. Notably and of importance is the fact that JP Morgan Case during this time was also one of Meritage Corporation lien/holder lenders.

34.     There is absolutely nothing linking Mr. Mullen a consumer to the above-demonstrative business commercial transaction between Netbank----Guaranty Federal Bank--------Meritage Corporation, other than the theft and unlawful use of Mr. Mullen PII to obtained said source of cash.

35.     Unknown to Mr. Mullen but known to Chase is that they never actually obtained any servicing rights that are the rights to collect the repayment for any enforceable loan from any lender that had made a loan to Mr. Mullen or on his behalf. Sometime in the year of 2009, JP Morgan Chase fraudulently deceived Mr. Mullen into believing that the servicing rights for loan for lender MTH Lending Group L.P.

36.     Defendant MTH Lending Group L.P., has since denied funding Mr. Mullen with a (i) Texas Home Equity Loan; (ii) advance cash money purchase loan or (ii) credit.

### VI. CAUSES OF ACTION

<u>COUNT-I</u> **Fraud by Misrepresentation against Meritage Homes of Texas LLC and its lender MTH Lending Group L.P.**

37.      Plaintiffs hereby adopt by reference each and every paragraph of the Facts and allegations stated in this Petition as if fully and completely set forth hereto.

38.     On  **<u>April 14 , 2007</u>** made false promises and material misrepresentation that she had been approved for extension of credit in the amount of  **<u>$214,690.00</u>**, under loan number **<u>1000629616</u>**  to fund his  <u>purchase price;</u>

39.     Defendants made false promises to Mullen that he was approved for an extension of credit mortgage that was material and made with the intention of not fulfilling it; made to Mullen for the purpose of inducing her into enter a Mortgage loan contract; and Mullen justifiably relied on defendants' false promise by entering into said contract.

40.     Pursuant to Section 27.01(b) of the Texas Business and Commerce Code, because of the false representations and false promises made by defendants are liable for Mr. Mullen actual damages, pursuant to Section 27.01 (c) of the Texas Business and Commerce Code,

41.     Defendants made the false representation and false promises with actual awareness of the falsity thereof, they are liable for exemplary damages.

42.     Pursuant to Section 27.01 ((b) of the Texas Business and Commerce Code, because Defendants had actual awareness of the falsity or the representations and promises made to Mullen and Defendants benefitted from the false representations and promises, as such they are liable for exemplary damages.

43.     Pursuant to Section 27 .01(c) of the Texas Business and Commerce Code, Defendants are liable for the reasonable and necessary attorney's fees, expert witness fees, costs for copies of depositions, and costs of court incurred by *Thomas s. Fletcher v. Edwards*, 26 S.W.3d 66, 77 (Tex. App.—Waco 2000, pet. denied).

**COUNT 2-Common Law Fraud against Defendants Meritage Homes of Texas LLC., and its lender MTH Lending Group L.P.**

44.     Plaintiffs hereby adopt by reference each and every paragraph of the Facts and allegations stated in this Petition as if fully and completely set forth hereto.

45.     Plaintiff has since discover that on **April 14, 2007,** Defendants made a material false misrepresentation in that they had been approved for an extension of credit in the amount of **$214,690.00**, under loan number **1000629616** to fund the purchase price; knowing this representation was false and made with the intent to deceive with no intention of performing as represented at the time the representation was made. *Formosa*, 960 S.W.2d at 48; *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex.1986).

46.     The representation was false when the representation was made, and the defendants knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; the defendant's made the representation with the intent that the other party should act upon it;

47.     Mullen acted in reliance on the defendants' representation on **April 14, 2007** in that he has been approved for an extension of credit in the amount of **$214,690.00**, under loan number **1000629616;** to fund his purchase price and plaintiffs has thereby suffered injury. *In re First Merit*

*Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001) (orig. proceeding).

48.    Mullen seeks the actual amount of claim a loss of 1 Million Dollars for his proximately loss resulting from the defendant's fraudulent conduct." *Tilton v. Marshall*, 925 S.W.2d 672, 680 (Tex. 1996); and to recover reasonable cost and necessary attorney fees.

 **COUNT-3 Violation of Texas Deceptive Trade Practice Act against Meritage Homes of Texas LLC., and its lender MTH Lending Group L.P.**

49.    Plaintiffs hereby adopt by reference each and every paragraph of the Facts and allegations stated in this Petition as if fully and completely set forth hereto.

50.    Mullen is a consumers as defined in the DTPA, each of whom sought the financial services of the defendants that was to be furnished in connection with funding the sale of goods. S 17-45(2). See: Section 17-45(4), (the sale of real property and financing were inextricably intertwined). Texas DTPA and Tex. Bus. & Com. Code Ann. 17-45(1) (services).

51.    Mullen has since discovered that on **April 14, 2007** Defendants made a material misrepresentation that she had been approved for an extension of credit in the amount of **$214,690.00**, under loan number **1000629616**; to fund his purchase price; and defendants representation was made with the intent to deceive and with no intention of performing as represented at the time the representation was made. *Formosa*, 960 S.W.2d at 48; *Spoljaric v. Percival Tours, Inc.*, 708 S.}V.2d 432, 434 (Tex. 1986).

52.    Defendant's used false misleading and deceptive acts and practices to mislead plaintiffs into believing that they were approved for the financial services of extensions of credit that could and would be used to fund Mullen  acquisition of goods for which consumer status is established. ᴵ7.46(b)(24) of the DTPA. See, e.g., *Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705, 708 (Tex. 1983) (DTPA applied to financing for purchase of a property because purchaser "did not seek to borrow money; they sought to acquire land and a house."); *Brown v. Bank of Galveston*, 930 S.W.2d 140, 143 (Tex. App.-Houston [14 Dist.] 1996) ("Where the extension

of credit is incident to the sale of goods or services and the conduct of the party extending the credit is intertwined in the transaction, and the borrower is a consumer with respect to the creditor, as well as to the seller of the goods.").

53.     Under Section 17-45(4), the defendants made false promises and material misrepresentations, including those as described in this petition, which were false, misleading and deceptive in that the representations violates subdivisions (5) and (7) of Section 17-46 of Texas Deceptive Trade Practices Act designed to ensure the accuracy of descriptions of goods and services. This covers both general and specific descriptions in that they constitute representations that particular goods and services are of certain qualities which in this case was inaccurate or false, or the goods and services have certain qualities, uses or benefits for which they did not have; and

54.     Defendants, as alleged above, has in the course of trade and commerce engaged in false misleading and deceptive acts and practices declared unlawful in 17-46 (a) and (b) of the DTPA. Without limiting the foregoing, Defendants engaged in the following misconduct:

A.  S17-46(a) false, misleading, or deceptive acts or practices in the course of trade or commerce.

B.  §17.46(b)(3) causing confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another.

C.  §17.46(b)(5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not.

D.  §17.46(b)(7) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are another.

E.  S17-46(b) (12) representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law.

F.  S17-46(b) (24) failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

55.     Mullen, at the time, were unsophisticated first-time homebuyers of real property who had little or no prior real property finance experience and no legal expertise. Mullen had no reason to doubt the material representations of the defendants in that their purchase price could and would be finance with "extensions of credit" seller finance type loans; knowing defendant's had no intention of nor could have funded Mullen purchase price with a Texas Equity Loan; and Mullen detrimentally relied on the false, misleading, or deceptive act or practice,

56.     Defendants unconscionable act or practice by taking advantage of the consumer'/plaintiffs lack of knowledge, ability, experience or capacity to a grossly unfair degree; and violates Sec. 17.50(a)(3), of Texas Deceptive Trade Practices Act and was the producing cause of actual economic damages and damages for mental anguish suffered by Mullen . Mullen should recover actual damages of Five (5) Million for Thomas and an additional sum of three (3) times actual damages.

57.     In the alternative Defendants actions and omissions set forth above were, and each was, in violation of S17-46(a) in that said practice was false, misleading, or deceptive acts or practices in the course of trade or commerce, and the producing cause of actual, economic damages and for mental anguish to the Mullen or pecuniary loss sustained by the plaintiff,.

58.     Further said acts and practices were committed knowingly, for which the Plaintiffs should recover an additional sum of three (3) times actual damage. *Amstadt v. U.S. Brass Corp.,* 919 S.W.2d 644, 649 (Tex.1996). The prevailing party is to be awarded court costs and reasonable and necessary attorney's fees.

**COUNT-4 Fraud- Misrepresentation against Meritage Homes Corporation Stewart Title Company and Mary A. Lester f/k/a "MTH Title Company L.P."**

**59.**     Plaintiffs hereby adopt by reference each and every paragraph of the Facts and allegations stated in this Petition as if fully and completely set forth hereto.

60.    Mullen discovered that on May 21, 2007, Defendants made a material misrepresentation that Mullen was closing on a loan for an extension of credit "seller financing" from lender MTH Lending Group LP., a Texas limited partnership from lender licensed branch location of 550 Westcott, STE30, Houston Tex, 77007, to consummate the sale and purchase of real estate lot in Miramar Lake subdivision.

61.    These representation were false and the defendant's knew the representation was false when made or made it recklessly without any knowledge of the truth and/or as a positive assertion; the defendant made the representation with the intention that it should be acted upon; the representation was in fact justifiably relied upon by Mullen when deciding to sign and execute certain loan documents to said lenders and participate in the closing under the false pretenses that he was consummating the purchase price of real estate lots in Miramar Lake when in fact he was not. . See *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010); see also *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 575 (Tex. 2001).

62.    Defendants    proximately caused the actual damages to Mullen in the amount of One (1) Million Dollars, Attorney fees in the amount of $40,000 in cost including exemplary damages under Texas Civil Practice & Remedies Code Section 41.003(a), and reasonable attorney fees.

**COUNT-5-Breach of Fiduciary Duty against Meritage Homes Corporation Stewart Title Company and Mary A. Lester f/k/a "MTH Title Company L.C.**

63.    Plaintiffs hereby adopt by reference each and every paragraph of the Facts and allegations stated in this Petition as if fully and completely set forth hereto.

64.    A special relationship of trust and confidence existed between the Defendants and Mullen.

65.     The defendants had fiduciary obligations and duties to Mullen including the duty to refrain from self-dealing, a duty of good faith, a duty of full disclosure, a duty of fairness and honesty in dealings with each other, and a duty to refrain from fraud.

66.     Defendants breached their fiduciary obligations to Mullen  as stated more fully above "by fraudulently inducing each of the plaintiffs' to execute fictitious loan documents to MTH Lending Group under material false misrepresentations said transaction would consummate the sale and purchase of real estate lots of land in Miramar Lake; knowing no said transaction was transpired instead; defendants fraudulently concealed the undisclosed funding transaction between Netbank-Guaranty Federal Bank-Meritage Corporation which was the only transaction that if fact transpired.

67.     The Defendants breach proximately caused injury to the plaintiff or benefit to the defendant. *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.- Dallas 2006, pet. denied). Mullen is entitled to exemplary damages under Texas Civil Practice & Remedies Code Section 41.003(a), and reasonable attorney fees.

**COUNT 6**: **SINGLE BUSINESS ENTERPRISE LIABILITY**

68.     Plaintiffs hereby adopt by reference each and every paragraph of the Facts and allegations stated in this Petition as if fully and completely set forth hereto.

69.     Pleading further and in the alternative, if necessary, Mullen asserts that the Defendant s Stewart Title Company, Meritage Homes Corporation, and Mary L. Lester a controlling members of MTH Title Company L.C., are liable for the causes of action asserted herein on the basis of their relationship with one another and/or the single business enterprise theory.

70.     They operated a single business enterprise. On information and belief, they maintained common employees, common offices, centralized accounting. Additionally, these

named defendants have unclear profit allocations, common contact information, services rendered by employees of one entity for another entity, and payment of wages by one entity for another entity's employees.

71.     As a result, they should be regarded as the same entity for liability purposes as the resources have been integrated to achieve a common business purpose.

**COUNT 7:  JOINT ENTERPRISE AND/OR JOINT VENTURE**

72.     Pleading further and in the alternative, if necessary, Mullen alleges the Defendants Stewart Title Company, Meritage Homes Corporation, and MTH Title Company were engaged in a joint enterprise and/or joint venture: there existed between all or a combination: (1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest; (4) an equal right to a voice in the direction of the enterprise.

73.     As a result, the above referenced Defendants are liable to Mullen for the acts and omissions causing the Mullen damages.

**COUNT 8: ALTER EGO**

74.     Pleading further and in the alternative if necessary, Mullen allege that, upon information and belief, Mary L. Lester, individually was the alter ego of one or more of the other defendants. All corporate protection has been and should be lost by these defendants.

**COUNT9 J.P. MORGAN CHASE BANK N.A., MONEY HAD AND RECIEVED**

75.     Plaintiffs hereby adopt by reference each and every paragraph of the Facts and allegations stated in this Petition as if fully and completely set forth herein.

76.     Mullen alleges that Defendant J.P. Morgan chase holds money that in good conscience and equity belongs to the plaintiff.

77.    Plaintiffs are entitled to each monthly paid to server J.P. Morgan Chase made under the false pretense that they were repaying a loan to the alleged lender (1) the defendant holds money and (2) the money belongs to the plaintiff in equity and good conscience. *Staats v. Miller*, 243 S.W.2d 686, 687-88 (Tex. 1951).

## VII.    PRAYER

WHEREFORE,  Alvin R. Mullen prays that the 3rd Party Defendants be cited can made to appear and answer this petition and for any further relief the deems proper and just.

Respectfully submitted,

COLLEEN M. McCLURE
 ATTONREY AT LAW

By:  /s/ Colleen M. McClure
Colleen M. McClure
SBN: 24012121
1101 Satellite View, Unit 203
Round Rock, Texas 78665
Telephone: (281) 440-1625
Facsimile: (281) 946-5627
colleen.mcclure@att.net